## WOODWARD v. HARBIN.

1. A party endorsing a promissory note, impliedly affirms its genuineness, as well as that of all previous endorsements, and though his endorsee in declaring against him, may in usual form allege the making of the note, and its endorsement to the defendant, yet he cannot be required to prove it.

2. A writ of execution when returned to the Court from which it issued, becomes a record of the Court, and a copy of it may be certified by the clerk to be used as evidence within the State.

3. The words " *nulla bona*" are not a sufficient return to a writ of *fieri facias* issued under the act of 1812, " regulating the mode of collecting money by execution."    These terms merely import a want of " goods."    To authorize an action against an endorser, the execution issued against the maker or obligor of a note or bond, should be returned " no property found," or in language of equivalent meaning.

Woodward v. Harbin.

4. Where an endorser pleads *nul tiel record*, and an issue is made up and submitted to the jury, who return a verdict against him—held ; that that plea is both unusual and unnecessary in an action upon an endorsement; yet as no objection was made to a trial by jury in the primary court, it will not avail on error.

This case comes up by writ of error from the Circuit Court of Talladega.

THE defendant in error brought an action of assumpsit as the second endorsee of a promissory note, against the plaintiff, his immediate endorser. The case was tried by a jury, upon issues on the pleas of *non assumpsit, nul tiel record,* and others which it is unnecessary to notice.

On the trial a bill of exceptions was taken by the plaintiff in error, to the ruling of the presiding judge. The points of exception are. 1. The court permitted the note endorsed by the plaintiff to be read to the jury, without proof of the signatures of the maker, or first endorser, or of the acknowledgment of the one having made and the other endorsed it, and charged the jury that such proof was not necessary. 2. The court permitted to be read to the jury a writ of *fieri facias,* issued on a judgment recovered by the defendant in error, against the maker of the note in the circuit court of Lowndes county, as part of the record, and decided that it might be certified by the clerk of that court, together with the endorsements thereon made by the sheriff, as part of the record in that case. 3. The court charged the jury that, under the statutes in regard to endorsements, if suit was brought on the note in question against the maker to the first term of the court (at which it was practicable) after its maturity, judgment obtained and *"nulla bona"* returned to a writ of *fieri facias* thereupon issued, the plaintiff in error was liable to the defendant, and the jury should find their verdict accordingly.

The receipt and return endorsed by the sheriff on the *fi. fa.* is in these words, viz : "rec'd in office 20th Oct., 1837, B. B. Brewett, sheriff. *Nulla bona.*

B. B. BREWETT, Shff."

The plaintiff has assigned many errors here, but he has only

insisted in his argument that the circuit court erred in the several decisions and charges presented by the bill of exceptions, and in allowing the the plea of *nul tiel record* to be tried by a jury, and to these alone the opinion of this court is confined.

CHILTON, for the plaintiff.

No COUNSEL, appearing for the defendant.

COLLIER, C. J.—A party who has endorsed a note, cannot when sued upon his endorsement, be allowed to object that the name of the maker or a previous endorser is not genuine, and thus put the holder to proof of the fact. The genuineness of their signatures, cannot affect the holder's right to recover; and though they be forgeries in fact, a subsequent indorser cannot set up such a defence. But it is insisted that the defendant in error states the making of the note and its endorsement by the payee to the plaintiff, and that having thus stated it, he is bound to prove it. True, the declaration in charging the plaintiff in error as an endorser, describes the note as having been made by the person purporting to have made it, and then traces the legal title to the plaintiff. This is the usual mode of declaring in such cases and does not throw upon a plaintiff the proof of the facts stated, otherwise than by the production of the paper. The plaintiff in error, by the mere act of endorsement, impliedly affirms the genuineness of the note and of the endorsement under which he claimed title, and cannot be heard, even if it could avail him anything, to show the truth to be otherwise.

Since the statute of 1819, an endorser when sued by a remote endorsee cannot throw upon the plaintiff the burthen of showing the genuineness of the intermediate endorsements, unless he will annex to a plea denying such endorsements, an affidavit stating that the defendant verily believes that some one or more of the endorsements were forged, or make oath to the same effect, in open court, at the time of filing such plea. [Aik. Dig., sec. 143 p. 283.] Previous to this act proof of intermediate endorsements were thrown on the plaintiff by a plea of the *general issue* without oath being made of its truth, but at no time and

under no state of pleading has the proof of previous endorsements been deemed necessary.

There can be no question that a writ of execution when returned to the court from which it issued, becomes a record of the court, and being so, a copy of it is as good evidence, as the copy of a declaration, or the other proceedings and judgment in a cause. To these as evidence, it is admitted the certification of the clerk of the court imparts authority in all courts within the State, and we can discover no sufficient reason for distinguishing an execution in this respect, from other parts of the record.

By the *ninth section* of the act of 1812, " regulating the mode of collecting money by 'execution," [Aikin's Dig. 163,] it is enacted that " lands, tenements, and hereditaments shall be subject to the payment of all judgments or decrees of any court of record within this territory, and the clerk of such court shall frame the execution accordingly. By the previous statute of 1807, the writ of *fieri facias* run only against the " goods and chattels" of the debtor, and the sheriff was only required to state by his return whether the defendant had any " goods and chattels." The act of 1812, having enlarged the mandate of the writ, it followed without any express legislative direction that the return should be enlarged to a corresponding extent. The return need not employ the precise terms used in the execution; any language of equivalent import, showing that the defendant had no estate from which it could be satisfied, would be quite sufficient.

But it is unnecessary thus to argue to a conclusion, for the 4th section of the act of 1829, " to repeal in part, and amend an act entitled, ' an act defining the liability of indorsers, and for other purposes,' " is direct to the point. (Aik. Digest 330.) That section is in these words, " when judgment shall be recovered either in the circuit or county courts, or before a justice of the peace, by the assignee or indorsee of any assigned or indorsed bond, note, or other writing and a writ of *fieri facias* shall be returned by the proper officer, " no property found" the said assignee or indorsee may commence his action against the assignor or indorser on said assignment or indorsement, and

the return on said *fieri facias* shall be sufficient evidence of the insolvency of the maker or obligor to authorize a recovery against him on his said assignment or indorsement." The terms here employed are too explicit to allow room for a doubt.

The terms "*nulla bona*," are not of sufficiently extensive meaning to respond to the mandate of the execution. They import that the defendant in execution had "no goods" which could be subjected to its satisfaction. Now this may have been true, and yet he may have been in possession, or the owner of real estate, from a sale of which satisfaction could have been obtained. This being the case it is clear that, the return of the execution which was before the jury on the trial, is not as broad as the statute requires, and the court, consequently, erred in instructing the jury that it was sufficient, (the other essential facts being shown) to authorize a verdict against the plaintiff in error.

The plea of *nul tiel record* in actions like the present, is very unusual. All the benefit to be derived from it may be had under the *general issue*, which imposes upon the plaintiff the proof of a recovery against the maker of the paper indorsed, and the return of "no property found," or the necessity of showing a sufficient excuse for the omission to sue the maker.

That the plea of *nul tiel record* when regularly pleaded, presents an issue to be tried by the court is unquestionable, and if the court was to force the parties to submit the determination of such a plea to a jury, it would be error. But in the case at bar the parties seem voluntarily to have submitted their case to the jury, who tried the issues and returned their verdict, and the unsuccessful party cannot now be heard to object to the irregularity in the trial. The objection should be heard with less favor, as it is obvious that the plaintiff in error has had every advantage which he could have obtained under the plea of *nul tiel record*, upon the trial before the jury. But for the error of the circuit court in ruling the return of "*nulla bona*" on the execution, to be a sufficient compliance with the statute, its judgment is reversed and the case remanded.